UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-145-RJC-DCK

| | |
|---|---|
| SONIA S. BLACKWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| TONI ANN GAITHER, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of the Amended Complaint, (Doc. No. 4). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 3).

### I. BACKGROUND

*Pro se* Plaintiff filed this action on September 12, 2018, pursuant to the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

Plaintiff, an African American woman over the age of 40, has filed this action against her former employer, FairView Kids Care, and its Administrative Director Toni Ann Gaither. Plaintiff claims that she was discriminated against, received unequal terms of employment, and was harassed and retaliated against based on her age and race. She claims that she was treated differently from white employees and was ultimately terminated from her employment.

Plaintiff alleges that she was hired to work as a 3-year-old teacher on February 1, 2016, with a co-teacher. During her interview, Gaither made a comment that an employee named Wanda, whom Plaintiff later discovered was Black, would "jump off a bridge" if Gaither told her to. (Doc.

1

No. 4-1 at 1). Plaintiff worked in the 3-year-old class for a month and a half then was moved to a 2-year-old class with a co-teacher named Colleen. One morning when the breakfast was pancakes, Colleen asked the kids if they know about "Aunt Jemima, I know Ms. Sonia does." (Doc. No. 4-1 at 3). Plaintiff mentioned the incident to Gaither, who asked Plaintiff if she wanted Gaither to address it and Plaintiff said no because she thought it might be a one-time event. Plaintiff continued working with Colleen and noticed how mean Colleen was to the kids and even harmed them at one point. Plaintiff did not report Colleen because she was new and "was beginning to see how things went" at the school. (Doc. No. 4-1 at 3).

After about two months of employment while Plaintiff was still new, Plaintiff came inside with her half of the class and left one of the children outside with other teachers. Another teacher reported the incident to Gaither and Plaintiff received a write-up.

Plaintiff started working in a 4-year-old class in September with co-teacher Ashley Porter. Although co-teachers' responsibilities were supposed to be shared, Porter would not help clean the room and take out the trash. Plaintiff mentioned this to Gaither who said she would take care of it. Porter called in a lot without having time to use and Plaintiff was left alone in the class with an occasional floater. When Porter was present, she would often go down the hall to talk to Gaither, leaving Plaintiff alone with the kids. Plaintiff continued to do her job and the kids liked her. When Porter became pregnant her laziness got worse and she started spitting in the classroom trash can. Plaintiff mentioned this to Gaither, who "did not like it," and told Plaintiff to talk to Porter herself. (Doc. No. 4-1 at 4).

On September 20, 2016, Porter and Plaintiff received a warning letter from Gaither about keeping proper paperwork in the classroom which was both teachers' responsibility. Plaintiff went

2

to see Gaither because she was new, had never touched the paperwork because Porter had been completing it, and Plaintiff saw no reason to check her work. (Doc. No. 4-1 at 4). Gaither seemed to understand but later claimed this was Plaintiff's second write-up. Plaintiff sought and received instruction on how to complete the paperwork from Tommie Dean then made sure the paperwork was completed and correct from that point onward.

Plaintiff heard that Porter said that she and Plaintiff did not like each other. Plaintiff confronted her and Porter said that they were not working together as a team. Plaintiff said she was trying to be a team player but Porter brushed her off. Porter then started keeping notes on Plaintiff and reported to Gaither about her.

Plaintiff's work schedule was 8:30 to 5:30 and Porter's was 9:00 to 6:00. Plaintiff occasionally switched schedules with Porter so that Porter could take her daughter to dance class when Plaintiff's part-time job schedule permitted. Plaintiff was unable to switch work hours with Porter on one occasion, Porter reported this to Gaither, and Plaintiff was called into an office for a meeting with Pastor Paul Hill, Gaither, and Sandy Jennings. Plaintiff explained that she would cover Porter when she was able but that it was not her responsibility to do so. Plaintiff was told that she might need to decide which job was more important to her and that she needed to change the hours of her part-time job. Plaintiff was told that Porter has more education than Plaintiff and that she should defer to Porter's choice of schedule despite Plaintiff's seniority. The next day, Pastor Hill told Plaintiff he agreed with her that she should not have to change her schedule to accommodate Porter. Porter was unhappy that Plaintiff would not help her with the schedule and continued to document notes on Plaintiff and report them to Gaither.

In December 2016, Plaintiff was accused by a parent of pulling a child off the toilet, causing him to bite his tongue. Plaintiff was called into a meeting and Gaither started to tell her she was fired. Plaintiff explained that Porter had taken the kids to the bathroom that day. Porter was called into the meeting and admitted she took the children to the bathroom. Nothing was done to Porter. Later, Plaintiff found out that Porter had told another teacher that Plaintiff was going to get fired that day, which Porter would not have known unless she and Gaither had discussed it.

After Porter stopped working at the school, Wendy Dickens was hired as Plaintiff's co-teacher. Plaintiff could tell by the way Dickens acted that she was keeping an eye on Plaintiff. Dickens left Plaintiff to clean the room and spent a lot of time out of the classroom talking to Gaither as Porter had done. Gaither told Plaintiff she noticed this on classroom cameras but did nothing about it.

On March 28, 2017, Plaintiff was asked about an incident where another teacher said she heard Plaintiff say "shout up" to a child. (Doc. No. 4-1 at 6). The child's parents did not say anything about the incident or treat Plaintiff differently. Plaintiff said she was overwhelmed in the class because she had no help, and the child was making fun of another who had spilled milk, then they were walking through it without Dickens doing anything to help. Gaither told Plaintiff to address the issue with Dickens and Plaintiff said it was a "race issue." (Doc. No. 4-1 at 7). Gaither said she is not prejudiced. Plaintiff explained she did not say Gaither is prejudiced but that she and Pam Miller felt that it was. Pastor Hill said they should get Miller's opinion. They did so without Plaintiff in the office.

In March, Gaither showed Miller and Plaintiff a text message from Porter saying that she "did not want to deal with" Plaintiff and Miller. (Doc. No. 4-1 at 7). When Plaintiff confronted

4

Porter while Porter was visiting the school, Porter told her that she had not come to visit Plaintiff and that Plaintiff should "shout up and get back in that room." (Doc. No. 4-1 at 7). Plaintiff denies threatening Porter. Teachers including Miller and Plaintiff were asked to write statements about the incident.

Plaintiff denies leaving children outside unattended on May 11 and 12 or leaving children in the classroom unattended on October 6, 2016. Plaintiff was never asked about these incidents, she has witnesses, and she never saw a disciplinary action letter about them.

Plaintiff missed a mandatory meeting on March 28, 2017 at 6:00 which she forgot about. This was the first meeting she had missed. Gaither called Plaintiff to see why she was not at the meeting and Plaintiff explained that she forgot. Gaither suspended Plaintiff for three days. Gaither then called Plaintiff and asked whether she would want a cook job if it came open and Plaintiff said yes. When Plaintiff came in to pick up her check on March 30, Gaither said the board had decided to terminate her. Plaintiff requested a meeting with the board which was denied.

Gaither did not witness any of these incidents, believed other teachers over Plaintiff, and put their notes in Plaintiff's file. Gaither had other teachers write more notes after she received Plaintiff's EEOC complaint.

Plaintiff's performance and attendance were not bad. No other teacher has been suspended from their jobs even when a teacher had numerous complaints from parents, harmed a child, and was investigated by Child Services. Other teachers missed meetings and nothing was done. Gaither made sure that white teachers got time off and the hours they wanted even if they had no leave time or had not yet worked for the school for 90 days.

Plaintiff has filed a Charge of Discrimination that states:

I. On February 1, 2016, I began working for Fairview Kids Care as a Teacher. Shortly thereafter, negative racial comments were directed toward me. I complained to the Administrative Director. My workers subjected me to harassment and relentless scrutiny.

II. On March 28, 2017, I reported to the Administrative Director and a Board member that there is racial unfairness between the black and white workers. Black employees are disciplined for the same actions taken by their similarly situated white employees who are not disciplined.

III. On March 29, 2017, I was suspended for missing a staff meeting, and was discharged on March 30, 2017. No reason was given for the discharge.

IV. I believe I have been discriminated against on the basis of my Race (Black), and subjected to retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Also, I believe I was discriminated against in the basis of my Age (40+) violation of the Americans with Disabilities Act of 1990, as amended.[1]

(Doc. No. 4-1 at 1).

Plaintiff filed a Dismissal and Notice of Rights & Notice of Suit Rights dated June 19, 2018, stating that the EEOC is unable to conclude that the information obtained establishes violations of the statutes. (Doc. No. 4-1 at 2).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction

---

[1] Plaintiff does not include an ADA claim in the Amended Complaint. See (Doc. No. 4 at 3).

requirement will not permit a district court to ignore a clear failure to allege facts in a complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). It is well settled that federal courts performing their duties of construing *pro se* pleadings are not required to be "mind readers" or "advocates" for *pro se* litigants. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). While a plaintiff need not pled a *prima facie* case for relief to survive initial review, the plaintiff must still comply with the ordinary rules for assessing the sufficiency of a compliant and set forth a short and plain statement for relief. McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin., 780 F.3d 582, 585 (4th Cir. 2015); Fed. R. Civ. P. 8(a)(2).

## IV. DISCUSSION

**(1) Parties**

Plaintiff names as Defendants her former employer, FairView Kids Care, as well as an individual, Administrative Director Toni Ann Gaither. Individuals are not liable in Title VII or ADEA employment discrimination actions. Lissau v. Southern Food Servs., Inc., 159 F.3d 177 (4th Cir. 1998); Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999). The proper Defendant is the employer itself, in this case, FairView Kids Care. Therefore, Plaintiff's claims against Gaither will be dismissed.

**(2) Title VII**

Title VII prohibits "an employer . . . [from] discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff, who is African American, has adequately alleged that she was discriminated

7

against because of her race. She alleges that she was denied privileges that white employees were granted, was disciplined unfairly and unequally, and was terminated from her employment for the same conduct that was unpunished for white employees. Plaintiff's race discrimination claims are sufficient to pass initial review.

**(3)     ADEA**

The ADEA prohibits employers from discriminating against individuals because of their age with the protected class over the age of 40. 29 U.S.C. §§ 623(a), 631(a).

Plaintiff's only allegation with regards to age is that she is over the age of 40. She does not allege that she was treated differently from other employees or terminated because of her age. This vague, conclusory, and factually unsupported claim will be dismissed.

**(4)     Retaliation**

Section 704(a) of Title VII "prohibits an employer from taking an adverse employment action against any employee 'because he has opposed any practice made an unlawful employment practice." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005) (quoting Title VII § 704(a), 42 U.S.C. § 2000e–3(a)). To state a Title VII retaliation claim, a plaintiff must show: (1) participation in a protected activity; (2) subjection to an adverse job action; and (3) a causal connection between the activity and the adverse action. Matavia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001).

Plaintiff appears to allege that she treated unfairly and ultimately fired, in part, because she complained to the school's administration that she was being treated differently from white employees. See generally Strothers v. City of Laurel, Md., 895 F.3d 317 (4th Cir. 2018) (protected activity under Title VII includes complaining to superiors about suspected violations of Title VII).

This claim is minimally sufficient to pass initial review and will be permitted to proceed.

## V. CONCLUSION

Plaintiff's Amended Complaint passes initial review on her racial discrimination and retaliation claims, but the claims of age discrimination are dismissed for failure to state a claim under § 1915.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint, (Doc. No. 4), survives initial review on the claims of racial discrimination and retaliation against FairView Kids Care. The claims of age discrimination and the claims against Toni Ann Gaither are dismissed for failure to state a claim under Section 1915(e).

3. The U.S. Marshal is hereby directed to attempt to serve summons on Defendant **FairView Kids Care**, at the address provided on the summons form attached to Plaintiff's Amended Complaint. See (Doc. No. 4-2).

Signed: February 26, 2019

Robert J. Conrad, Jr.
United States District Judge